## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAM J. SIMONS, ET. AL.<br>        Plaintiffs,<br><br>        v.<br><br>TOWN OF SHERMAN, ET. AL.<br>        Defendants. | No. 3:16-cv-488 (MPS) |

### Ruling on Motions to Dismiss

### I.    Introduction

This action is the latest chapter in a property dispute between Plaintiffs Sam and Angela Simons and Defendants Town of Sherman and its First Selectman, Planning and Zoning Commission, Board of Selectmen, Inland and Watercourses Commission, Building Inspector, Zoning Enforcement Officer (collectively, the "Municipal Defendants") and the Simons' neighbor, Defendant Connie Wilson.  The dispute centers on a long driveway serving land owned by the Simons but crossing land owned by Wilson and the Town.  To resolve the dispute (and a pending lawsuit against Wilson and the Town of Sherman), the Simons, the Town, and Wilson entered into a settlement agreement concerning the Simons' rights to the property.  After executing the settlement agreement, the Simons made inquiries to the Municipal Defendants about whether their rights under the settlement agreement were coextensive with previously issued permits they held.  The Municipal Defendants referred the Simons to the settlement agreement but made no further response.  The amended complaint alleges that Defendants' failure to confirm the relationship between the Simons' rights under the settlement agreement and the earlier permits violates the federal and state constitutions and various common law precepts, and that the Town and Wilson engaged in malicious prosecution by not taking steps to terminate a criminal trespass prosecution against Sam Simons.

1

The Municipal Defendants and Wilson have filed motions to dismiss the Simons'
amended complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and
12(b)(6) for failure to state a claim.  As more fully explained below, I dismiss the action because
(i) the Simons' federal claims – violation of the Fourteenth Amendment's Due Process and Equal
Protection Clauses (Counts Seven, Eight, and Nine) and violation of the Fifth Amendment's
Takings Clause (Count Ten) – are unripe, and (ii) in the absence of federal claims over which the
Court has jurisdiction, I decline to exercise supplemental jurisdiction over the Simons' remaining
state law claims – declaratory relief (Counts One, Two, Three, and Five), malicious prosecution
(Count Four), fraud (Count Six), and alleged violations of state constitutional provisions (Counts
Eleven through Thirteen).

## II.    The Amended Complaint

### A.  Factual Allegations

The amended complaint alleges the following facts.

The Simons own and reside on a lot in the Glen View Subdivision in the Town of
Sherman, Connecticut.  (ECF No. 47 at ¶¶ 2, 15.)  The Simons' lot is bordered by a property –
known as the "Reserve Lot" – owned by their neighbor, Wilson.  (*Id*. at ¶ 17.)  The driveway
serving the Simons' lot crosses the Reserve Lot and Glen View Drive Road, which is owned by
the Town of Sherman.  (*Id*. at ¶¶ 21-27.)  The driveway was built pursuant to permits issued in
the 1970s by the Defendant Building Inspector and Defendant Inland Wetlands and
Watercourses Commission. [1]  After Wilson became the owner of the Reserve Lot, Defendants
took the "position that [the Simons] had no rights whatsoever in the Reserve Lot," including use

---

[1] The amended complaint uses the term "Underlying Land Use Approvals" to define the permits.
(ECF No. 47 at ¶ 26.)

of the portion of the driveway located on the Reserve Lot.  (*Id*. at ¶ 35.)  The Defendants'
position led to a series of disputes concerning the rights to and use of the Reserve Lot, ranging
from criminal prosecutions to a civil action.  (*Id*. at ¶¶ 35-46.)  In 2012, Sam Simons was
"arrested and charged with criminal trespass for trimming grass on [a] portion of the Driveway
located on the Reserve Lot."  (*Id*. at ¶ 35.)  On May 22, 2012, the Simons sued the Town of
Sherman and Wilson in state court, alleging that the tax sale in which Wilson purchased the
Reserve Lot was improper.  (*Id*. at ¶ 36.)

On February 27, 2014, the Simons, Wilson, and the Town of Sherman entered into a
"Stipulation and Settlement Agreement" (the "Settlement Agreement") to resolve the Simons'
state court action, and the state court adopted the Settlement Agreement as a final judgment. [2]
The Settlement Agreement governed the Simons' access to and use of the Reserve Property,
including the driveway, and included a provision stating that "[t]he driveway constructed by or
for the owner(s) of [the Simons' property] in connection with building permit #1262 was
pursuant to a properly issued driveway permit."  (ECF No. 47-1 at 6.)  The Settlement
Agreement also included a release by the Simons of all claims against Wilson and the Town, and
a release by Wilson of all claims against the Simons.  (*Id*. at 7-8.)  The Settlement Agreement
also contained an easement agreement between the Simons and Wilson further defining the
Simons' rights to the Reserve Lot.  (*Id*. at 4, 31-37.)

On March 26, 2014, "[the Simons] were stunned to learn that defendant Wilson was
unwilling to drop criminal trespass charges against plaintiff Sam Simons for trimming grass on
the [d]riveway" despite entering into the Settlement Agreement a month earlier.  (ECF No. 47 at

---

[2] A copy of the Settlement Agreement is attached to the amended complaint.  (ECF No. 47-1 at 1-
12.)

¶ 50.)  On May 19, 2014, Sam Simons was tried on the 2012 criminal trespass charge in Connecticut state court.  (*Id*. at ¶ 54.)  He was found not guilty.  (*Id*.)  The Simons contend that Sam Simons' prosecution was based on a map – known as "Map #2010" – which "is currently in use by Defendant Town of Sherman Zoning Enforcement Officer and Town of Sherman Resident State Trooper," who "both report to and are supervised by defendant Town of Sherman First Selectman."  (*Id*. at ¶ 58.)  The Simons claim "Map #2010 conflicts with and is contrary to the map attached to the [S]ettlment [A]greement" setting forth the Simons' rights to the Reserve Lot.  (*Id*. at ¶ 57.)  The Simons claim that "[d]ue to the close coordination and alliance with the owner of the Reserve lot parcel of land (i.e., defendant Wilson)" with Municipal Defendants, the Simons "believe that Map #2010 could nefariously be used in the future to enforce land use activities authorized by the...[S]ettlement [A]greement and the [U]nderlying [L]and [U]se [A]pprovals."[3]  (*Id*. at ¶ 58.)

In light of the "prosecution for criminal trespass for trimming grass on the [d]riveway" and prospect of future "nefarious[]" activity by Defendants concerning the Simons' rights to the Reserve Lot, the Simons sent letters to the Municipal Defendants between May 4, 2015, and May 7, 2015.  (*Id*. at ¶¶ 60, 61, 63, 65.)  In their letters, the Simons asked the Municipal Defendants to "either (a) acknowledge the scope of permits set forth in Section III.C. of the [S]ettlement [A]greement and underlying land use approvals; or (b) provide citation to the ordinance supporting Town's representations that the [Simons'] activities are unlawful."  (*Id*. at ¶ 60.)  Specifically, the Simons requested "confirm[ation] that the Easement Agreement" in the Settlement Agreement was consistent with the the Underlying Land Use Approvals.  (*Id*. at ¶ 65)

---

[3] It is unclear whether the Simons intended to allege that Map # 2010 "could nefariously be used in the future" to *prohibit* land use activities authorized by the Settlement Agreement and Underlying Land Use Approvals.

4

The Simons sought the confirmation on the grounds that "there is nothing in the [S]ettlement [A]greement that sets forth the areas and boundaries established by the Municipal Defendants at the time said defendants issued said permits and approvals." (*Id*.)  Therefore, according to the Simons, "there is nothing available from [the] Municipal Defendants that could be used by an arresting officer of the Connecticut State Police, or a Judge in court proceedings, or anyone else that shows the boundaries associated with said permits and approvals." (*Id*.)

On May 28, 2015, "the Sherman Town Attorney replied and simply referred [the] Simons to the [S]ettlement [A]greement." (*Id*.)  According to the Simons, Municipal Defendants "insist that [they] must file an application in lieu of recognizing areas of land covered by the permits set forth in Section III.C. of the [S]ettlment Agreement and the underlying land use approvals." (*Id*. at ¶ 67.)  Furthermore, the Simons assert "[a]s a result of the affirmative actions, inactions, omissions and active silence of defendants since February 27, 2014, [they] have and continue to suffer damages." (*Id*. at ¶ 116.)  For example, the Simons claim "deprivation of (a) [their] constitutional rights to travel to and from their home without fear of arrest, other enforcement action or other restrictions; and (b) [their] constitutional rights of liberty to enjoy lawful activities authorized by the permits set forth in Section III.C. of the [S]ettlement [A]greement and underlying land use approvals without fear, intimidation or threat of arrest and imprisonment." (*Id*.)

### B.  Legal Claims and Prayers for Relief

The Simons' legal claims arise from the alleged "affirmative actions, inactions, omissions and active silence by Municipal Defendants and Defendant Wilson with respect to [their rights under] the [S]ettlement [A]greement." (ECF No. 47 at ¶ 79.)  They contend that such actions "violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment and 42

U.S.C. § 1983." (*Id.*)  They "also allege that such actions…violate [the Simons'] rights under

[the] Connecticut Constitution, statutes, and regulations, and Town of Sherman ordinances."

(*Id.*)

      The amended complaint contains thirteen counts:

Count One – a declaratory judgment "setting forth a boundary on the lands" that are the subject of the Underlying Land Use Approvals  (*Id.* at ¶ 82);

Count Two –  a declaratory judgment that "the activities and uses set forth in the Easement Agreement are lawful uses authorized by the permits set forth in Section III.C. of the [S]ettlement [A]greement and the underlying land use approvals" and that the Simons may enjoy those uses "without further municipal land use applications, notices, approvals, permits, restrictions, conditions or interferences from Municipal Defendants or [D]efendant Wilson"  (*Id.* at ¶¶ 85-86);

Count Three – a declaratory judgment recognizing "the effective date, underlying statutes, regulations, ordinances and codes, and the area of land covered by the permits set forth in Section III.C. [of the] [S]ettlement [A]greement and underlying land use approvals issued by [D]efendant Town of Sherman"  (*Id.* at ¶ 89);

Count Four – malicious prosecution  (*Id.* at ¶¶ 91-96);

Count Five –  a declaratory judgment that Map # 2010 is void  (*Id.* at ¶¶ 97-111);

Count Six – Fraud  (*Id.* at ¶¶ 112-13);

Counts Seven and Eight –  violations of the Due Process Clause of the Fourteenth Amendment  (*Id.* at ¶¶ 114-21);

Count Nine –  violation of the Equal Protection Clause of the Fourteenth Amendment (*Id.* at ¶¶ 122-27);

Count Ten – violation of the Takings Clause of the Fifth Amendment  (*Id.* at ¶¶ 128-30); and

Counts Eleven – Thirteen – violations of provisions of the Connecticut State Constitution (*Id.* at ¶¶ 131-39).

The amended complaint also seeks injunctive relief and monetary damages.  (ECF No. 47 at 31.)

### III.   Legal Standard

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckkett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere hypothetical question." *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 511 (2d Cir. 2014)(internal quotation marks and citation omitted). "A claim is not ripe if it depends upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all. The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (internal quotation marks and citation omitted).

### IV.   Discussion

#### A.  The Federal Claims Are Unripe (Counts 7, 8, 9, and 10)

The Simons allege violations of the Takings Clause of the Fifth Amendment and the Fourteenth Amendment's Due Process and Equal Protection Clauses: they allege that the Defendants have not confirmed whether their rights under the Settlement Agreement to use and access the Reserve Lot are consistent with the Underlying Land Use Approvals, and that the Defendants are "depriving [the Simons] of their property rights" and "have prevented [them] from using their property as a residential property as authorized by the [Underlying Land Use

Approvals]." (ECF No. 47 at ¶ 115.)  Defendants argue the Simons' claims are unripe because

there has been no "final decision" from a local authority on the requests made in the Simons'

letters to the Town regarding their rights under the Settlement Agreement and the Underlying

Land Use Approvals.  I agree that the failure of the Simons to obtain a "final decision" renders

their takings, equal protection, and due process claims unripe.

   In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*,

473 U.S. 172 (1985), the Supreme Court articulated a two-prong ripeness test for claims under

the Fifth Amendment's Takings Clause.  A plaintiff bringing a claim in federal court alleging

that a state or local government has taken his property in violation of the Fifth Amendment must

show that (1) the relevant governmental entity has rendered a "final decision" on the matter, and

(2) the plaintiff has sought just compensation by means of an available state procedure.

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S.

172, 186 (1985)(holding that a takings claim is ripe when a "government entity charged with

implementing the regulations has reached a final decision" and plaintiff "seek[s] compensation

through the procedures the State has provided…").  A "final decision" is a "definitive position on

the issue that inflicts an actual, concrete injury."  *Id*. at 193.  This requirement distinguishes

between "those cases in which a plaintiff has suffered a concrete and particularized, actual or

imminent injury, and those in which the injury is merely speculative and may never occur,

depending on the final administrative resolution."  *Sunrise Detox V, LLC v. City of White Plains*,

769 F.3d 118, 122 (2d Cir. 2014)(internal quotation marks and citations omitted).  The Simons

have the "high burden of proving that [the Court] can look to a final, definitive position from a

local authority to assess precisely how they can use their property."  *Murphy v. New Milford*

*Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005)(internal quotation marks and citation

omitted).  Before any local authority can reach such a "final decision," plaintiffs must submit "at least one meaningful application for a variance."  *Id*. at 348.

"The ripeness requirement of *Williamson,* although announced in a takings context, has been extended to equal protection and due process claims..."  *Dougherty v. Town of North Hempstead Board of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002).[4]  "*Williamson County* applies to due process [and equal protection] claims arising from the same nucleus of facts as a takings claim."  *Kurtz*, 758 F.3d at 516 (citing cases).  A due process and equal protection claim have the "same nucleus of facts" as a takings claim when they are based on the "same set of facts."  *Id*. at 514.

The Simons' due process and equal protection claims arise from the "same nucleus of facts" as their takings claim because the Simons allege each of those claims is based on "affirmative actions, inactions, omissions and active silence of defendants since February 27, 2014."  (ECF No. 47 at ¶¶ 116, 119, 123, 129, 132.)  All of the claims arise from allegations that the Simons wrote letters to the Municipal Defendants between May 4 and May 7, 2015, seeking confirmation of their rights under the Settlement Agreement, and that the Municipal Defendants failed to respond.  (*Id*. at ¶¶ 60-66.)  Therefore, the Simons' due process and equal protection claims are subject to *Williamson County's* ripeness analysis.

Under *Williamson County*, the Simons' takings, equal protection, and due process claims are unripe: it is plain that there has been no "definitive position on [their rights under the

---

[4] The Simons assert both procedural due process and substantive due process claims.  I construe such claims together because both are subject to *Williamson County's* "final decision" prong.  *See Kurtz*, 758 F.3d at 514 (distinguishing between procedural due process claims "alleging regulatory overreach," which must satisfy both the finality and the exhaustion requirements of *Williamson County*, and "substantive due process claims of arbitrary and capricious conduct," which "require only a showing of finality—there is no exhaustion requirement").

9

Settlement Agreement and the Underlying Land Use Approvals] that inflicts an actual, concrete injury." *Williamson*, 473 U.S. at 193.  As a preliminary matter, before any "final decision" can be made, there must be an "application" concerning the property at issue.  The Simons make no allegation of such an application.  *See, e.g.*, *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 599 (S.D.N.Y. 2013)("This failure by Plaintiffs to file (or their decision not to file) any formal application for use of the Subject Property leaves Plaintiffs outside the boundaries of the final decision rule."); *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 980 (9th Cir. 2011)(holding that "the Church's failure to complete even *one* full Use Permit application leaves us unable to discern whether there is a true case or controversy, and any resulting injury" (emphasis in original)); *Loesel v. City of Frankenmuth,* No. 08–CV–11131, 2009 WL 817402, at *13 (E.D. Mich. Mar. 27, 2009)(finding plaintiff failed to satisfy final decision rule, even if "the evidence showed that each individual city official opposed the building of a Wal–Mart," because the plaintiff "never even completed an initial application").  To be sure, the Simons have sent letters to the Municipal Defendants, but such informal communications are far from the formal applications required to serve as predicates to a "final decision."  *See Celentano v. City of West Haven,* 815 F.Supp. 561, 569 (D. Conn. 1993)("An unsuccessful effort to negotiate an informal resolution of a zoning dispute with a local agency ... does not, by itself, constitute final government action."); *see also Goldfine v. Kelly*, 80 F. Supp.2d 153, 160 (S.D.N.Y. 2000)("Informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action.").

In any event, assuming that the Simons' letters could be construed as "formal applications," the Simons do not allege facts suggesting that there has been a "final, definitive position from a local authority to assess precisely how [their rights under the Settlement

Agreement relate to the Underlying Land Use Approvals].” *Murphy*, 402 F.3d at 347.  To the contrary, the Simons allege that the Municipal Defendants have failed to make any decision concerning their rights under the Settlement Agreement, alleging the “only response to the letters” from the Municipal Defendant was “that the letters were ‘mundane…unsolicited correspondence from members of the public.’” (ECF No. 47 at ¶ 67.)  That response does not constitute a “final decision” because it takes no position – much less a definitive one – concerning any of the Simons’ rights under the Settlement Agreement as they relate to the Underlying Land Use Approvals.  And the Simons do not (nor could they) allege that the Municipal Defendants’ response “inflict[ed] an actual, concrete injury.” *Williamson,* 473 U.S. at 193.  Indeed, the Simons’ allegations – that “there is nothing available from Municipal Defendants that could be used by an arresting officer of the Connecticut State Police, or a Judge in court proceedings, or anyone else that shows the boundaries associated with [the Settlement Agreement]” and “that Map #2010 could nefariously be used in the future” – suggest “merely speculative” injuries that “may never occur.” *Sunrise Detox V, LLC*, 769 F.3d at 122 (internal quotation marks and citations omitted).

The Simons also do not allege that they have been prohibited from taking any action on their property by the Defendants.  Though the Simons allege “Municipal Defendants insist that their discretionary power can require [the Simons] to file applications for new land use approvals and/or permits for the lands covered by the permits” in the Settlement Agreement, they make no allegation that they have been injured in any way by this position.  They have not alleged that the Municipal Defendants have exercised such discretion or taken, or even threatened, any enforcement action against them.  They have not even alleged that they sought a new land use approval or permit for their property.  The Simons’ remaining allegations about their alleged

11

injuries are conclusory.  (*See* ECF No. at ¶ 68)("Municipal Defendants are using criminal and zoning enforcement powers to effectively enforce boundaries associated with the [Settlement Agreement.]"); (*see also id*. at ¶ 116)(alleging "deprivation of…[Plaintiffs'] constitutional rights to travel to and from their home" and the right "to enjoy lawful activities authorized by the" Settlement Agreement.)

To the extent that the Simons argue that the Municipal Defendants' "active silence" constitutes a "final decision", it does not because it has not caused an actual, concrete injury.  *See Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, No. 11-CV-5608 CS, 2013 WL 135216, at *7 (S.D.N.Y. Jan. 10, 2013)(Plaintiff's allegations that defendant had rendered a "final decision" based on its "silence," "stalling tactic[s]," "delay" and a *"defacto* [*sic* ] denial," did not constitute "a final decision because [those actions] do[] not inflict the type of concrete injury necessary to render a claim ripe for federal review.")(citing cases).  Furthermore, their argument that the final decision requirement is satisfied based on the decisions rendered by the Municipal Defendants in approving the Underlying Land Use Approvals fails for two reasons. (ECF No. 55 at 7.)  First, the granting of those permits – which allegedly took place in the 1970s – did not give rise to this lawsuit, in which the Simons seek from the Municipal Defendants a determination of their rights under the Settlement Agreement and the Underlying Land Use Approvals.  Second, the Simons released all claims that they could assert as of February 27, 2014 – including claims related to the Underlying Land Use Approvals – against the Defendants by executing the Settlement Agreement.  (ECF No. 47-1 at 7-8)("By execution of this Stipulation and Settlement Agreement, the Plaintiffs release and discharge Wilson and the Town of Sherman, including all of its departments, its affiliated divisions, and its organizations of any kind, as now or hereafter…from any and all past, present or future claims, demands, obligations,

actions causes of actions, rights damages, costs, losses of services, expenses and compensation, of any nature whatsoever…which the [the Simons] now have, or which may hereafter accrue or otherwise be acquired on account of, or may in any way be related to or grow out of the claims [in connection with the state action].")  Therefore, any action the Simons might be challenging in this lawsuit must have occurred after February 27, 2014.  And they allege no final decision in that time frame.

Finally, there is nothing in the amended complaint suggesting that the futility exception to the final decision requirement applies here.  *Murphy*, 402 F.3d at 349("A property owner, for example, will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile.").  The Town's failure to respond substantively to the Simons' letters seeking "confirmation" and "acknowledgement" of their rights does not show that seeking the Town's approval for a particular use of the Simons' property would be futile.

Because the Simons have not obtained a "final decision," their takings, due process, and equal protection claims are unripe.[5]  Therefore, I dismiss the Simons' federal claims for lack of subject matter jurisdiction.

_____

[5] The Simons also lack standing as to all but one claim – the state law malicious prosecution claim by Plaintiff Sam Simon.  Although Defendants have not thoroughly briefed this issue, the Court must consider jurisdictional issues *sua sponte* and the Simons' lack of standing constitutes an independent basis to dismiss this action for lack of subject matter jurisdiction.  None of the claims for injunctive or declaratory relief are supported by factual allegations showing that the Simons face "imminent" harm – a requirement of standing to assert a claim for prospective relief.  *Clapper v. Amnesty Internat'l USA*, 133 S. Ct. 1138 (2013)("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (emphasis added).); *see also Friends of the Earth, Inc. v. Laidlaw Environmental Svcs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)("[A] plaintiff must demonstrate standing separately for each form of relief sought.")  The fact that the State of Connecticut continued to prosecute a trespass charge against Sam Simons after the Settlement Agreement was executed does not show the Simons face "imminent harm" from the

**B.  The Remaining Claims (Counts 1, 2 3, 4, 5, 6, 11, 12, 13)**

Because I am dismissing all of the federal claims, I decline to exercise supplemental

jurisdiction over the Simons' remaining claims.  28 U.S.C. §1367(c)(3); *Astra Media Grp., LLC*

*v. Clear Channel Taxi Media, LLC*, 414 Fed.Appx. 334, 337 (2d Cir. 2011)("[W]e have

generally held that where all the federal claims have been dismissed at a relatively early stage,

the district court should decline to exercise supplemental jurisdiction over pendent state-law

claims.").

**V.   Conclusion**

I grant the Motions to Dismiss under Fed. R. Civ. P. 12(b)(1) because I find that the

Simons' federal claims in Counts Seven, Eight, Nine, and Ten are unripe,[6] and because I decline

to exercise supplemental jurisdiction over the remaining state law claims – Counts One, Two,

Three, Four, Five, Six, Eleven, Twelve, and Thirteen.  I do not reach the Defendants' remaining

arguments, and all claims are dismissed without prejudice.  The Clerk is directed to close the

case.

---

Municipal Defendants or Wilson.  The Simons thus lack standing to seek prospective relief.  And
the only allegations of the amended complaint that might support a claim for damages relate to
the claim by Plaintiff Sam Simons for malicious prosecution – although I express no opinion as
to the merits of that claim.  For jurisdictional purposes, it suffices to point out that Sam Simons
asserts that claim under state law, and it thus does not independently support federal jurisdiction.
[6] The amended complaint suggests this Court may exercise jurisdiction over this action on the
basis of Fed. R. Civ. P. 19.  (ECF No. 47 at ¶ 30.)  Neither Rule 19 nor any other Federal Rule of
Civil Procedure confers such jurisdiction.  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365,
370 (1978)("[I]t is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw
federal jurisdiction."); *see also S.E.C. v. Cherif*, 933 F.2d 403, 413 (7th Cir. 1991)("Rule 19
alone cannot give the district court subject matter jurisdiction over the dispute with Sanchou
because Rule 19 is not a source of federal jurisdiction.").

IT IS SO ORDERED.


/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              March 16, 2017